**E-FILED**

11/17/20

**COMMONWEALTH OF MASSACHUSETTS**
**WORCESTER, SC**

**SUPERIOR COURT**

|  |  |
|---|---|
| JOHN CONNOR, on behalf of themselves and all others so similarly situated, | ) ) ) |
| *Plaintiff,* | ) ) ) |
| vs. | ) ) ) |
| HOMEBRIDGE FINANCIAL SERVICES, INC | ) ) |
| *Defendant.* | ) ) ) |

CA NO. 2085CV1263A

CLASS ACTION COMPLAINT

JURY DEMAND

## INTRODUCTION

1.    Representative Plaintiff John Connor, on behalf of themselves and all other similarly-situated individuals ("Plaintiff") bring this class action as described in the paragraphs set forth herein.

2.    Plaintiff seek a declaratory judgment that the Defendant foreclosed mortgages, sold mortgaged properties at Mortgagee's Foreclosure Sales, and conveyed those properties without authorization to accelerate or foreclose Plaintiff' mortgages as those actions were in breach of Paragraph 22(d) of those mortgages and were not permitted by regulations of Secretary of the Department of Housing and Urban Development, codified under 24 CFR 203.604(b). Therefore, this complaint seeks damages arising from the wrongful actions of the Defendant by conducting non-judicial foreclosures, Mortgagee's Foreclosure Sales, and conveying real property in violation of 24 CFR 203.604(b).

1

## JURISDICTION AND VENUE

3.    Venue is proper in this Court in that a substantial part of the events or omissions giving rise to this claim have occurred, and the real property that is the subject of the action is situated within the Commonwealth of Massachusetts.

4.    Pursuant to Massachusetts Superior Ct. R. Civ. P. Rule 23(a), this complaint is a putative class action in which the class is so numerous that joinder of all members is impracticable, there are questions of law and fact common to the class, and the claims of the Representative Plaintiff are typical of the claims of the class. Further, the Representative Plaintiff will fairly and adequately protect the interest of the class.

5.    Pursuant to Massachusetts Superior Ct. R. Civ. P. Rule 23(b), the Defendant have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

6.    Pursuant to Massachusetts Superior Ct. R. Civ. P. Rule 23(b), the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

7.    Pursuant to Massachusetts Superior Ct. R. Civ. P. Rule 23(b), it is not in the best interest of members of the class to individually control the prosecution or defense of separate actions.

8.    Pursuant to Massachusetts Superior Ct. R. Civ. P. Rule 23(b), the specific extent and nature of any litigation concerning the controversy already commenced by or against members of the class is minimal.

9.    Pursuant to Massachusetts Superior Ct. R. Civ. P. Rule 23(b), it is desirable to concentrate the litigation of the claims in this particular forum.

10.     Pursuant to Massachusetts Superior Ct. R. Civ. P. Rule 23(b), there are little to no difficulties likely to be encountered in the management of a classification.

11.     Plaintiff and members of the class claim ownership of their rightful property and seek to clear their titles of all illegal encumbrances or in the alternative seek actual, exemplary, punitive, and monetary damages for the Defendant violation of 24 CFR 203.604(b).

12.     Plaintiff and members of the class claim a judicial determination whether the deed to their properties are affected by any conveyance of another person in each of their chain of title.

## PARTIES

13.     Representative Plaintiff John Connor is a citizen of the Commonwealth of Massachusetts and claims to be one of the rightful owner of the property located at 244 Cedar Street, Sturbridge, MA 01518, which is the subject property as noted herein.

14.     Defendant, Homebridge Financial Services, Inc. ("Homebridge") is a mortgage servicing and banking related services company. Its headquarters are located at 194 Wood Avenue South, Ninth Floor, Iselin, NJ 08830.

## GENERAL FACTS AND RELEVANT BACKGROUND

15.     The majority of mortgages made in this country are securitized. Simply put, the originating lender grants the initial loan and the borrower gives a promissory note (underlying obligation) and mortgage (security instrument) to that originating lender. The originating lender then typically "pools" that mortgage and note with other mortgages and notes, and sells all of their interest in and title to those notes and mortgages to a trust. The trust then sells "bonds" or "certificates" representing a percentage of the assets of the trust, mainly the notes and mortgages, and the cash flows associated with the monthly payments made thereon.

16.     Mortgages insured by the Federal Housing Authority (FHA) and their corresponding underlying obligations (notes) are originated by entities, such as Defendant Homebridge's and are then pooled and transferred into mortgage backed trusts. Trusts backed by FHA insured mortgage loans are administrated by Government National Mortgage Association (Ginnie Mae). Ginnie Mae is a wholly-owned corporate instrumentality of the United States located within the Department of Housing and Urban Development and was created by the Housing and Urban Development Act of 1968, 825 Stat. 491. Its powers are prescribed generally by Title III of the National Housing Act, as amended, Pub. L. 73-479, codified at 12 U.S.C. 1716 et seq.

17.     The originating entity of FHA mortgages is also referred to as an Issuer. After originating a number of FHA mortgages, the Issuer creates pools of mortgages or loan packages of mortgages with those mortgages it has originated or acquired. It prepares and submits documents for each pooled loan to a document custodian (which may be the same entity as the Issuer), and documents describing the pool or loan package as a whole to a Pool Processing Agent ("PPA").

The Issuer markets securities guaranteed by Ginnie Mae that are collateralized by these pools or loan packages. It administers the securities, providing the funds required for monthly payments to be made to security holders and reporting to Ginnie Mae. The Issuer is responsible for servicing the pooled mortgages until maturity or termination.

18.     All FHA standard mortgage contracts at paragraph 22(d) state that regulations issued by the Secretary of Housing and Urban Development will limit a Lender's rights, in the case of payment defaults, to require immediate payment in full, and foreclose, if not paid. Paragraph 22(d) further states that the security instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

19.    At issue in this action is a Regulation codified in 24 CFR 203.604(b) which states that a mortgagee must have a face-to-face interview with the mortgagor, or make a reasonable effort to arrange such a meeting, before three full monthly installments due on the mortgage are unpaid.

20.    24 CFR 203.604(c) further states that a face-to-face meeting is not required if: (1) the mortgagor does not reside in the mortgaged property, (2) the mortgaged property is not within 200 miles of the mortgagee, its servicer, or a branch office of either, (3) the mortgagor has clearly indicated that he will not cooperate in the interview, (4) a repayment plan consistent with the mortgagor's circumstances is entered into to bring the mortgagor's account current thus making a meeting unnecessary, and payments thereunder are current, or (5) a reasonable effort to arrange a meeting is unsuccessful.

21.    24 CFR 203.604(d) additionally states that a reasonable effort to arrange a face-to-face meeting with the mortgagor shall consist at a minimum of one letter sent to the mortgagor certified by the Postal Service as having been dispatched. Such a reasonable effort to arrange a face-to-face meeting shall also include at least one trip to see the mortgagor at the mortgaged property, unless the mortgaged property is more than 200 miles from the mortgagee, its servicer, or a branch office of either, or it is known that the mortgagor is not residing in the mortgaged property.

## ALLEGATIONS OF THE NAMED PLAINTIFF

22.    The Representative Plaintiff repeat and re-allege every allegation above as if set forth herein in full.

23.    Plaintiff bring this claim on their own behalf and on behalf of each member of the class described above.

24.    On March 15, 2019, John Connor, was granted one of the subject property located at 244 Cedar Street, Sturbridge, MA 01518. The deed evidencing the transfer of the subject property was

recorded in the Worcester County Registry of Deeds in Book 60347 at Page 238, on May 1, 2019.

25.    On April 30, 2019, John Connor executed a mortgage and note both in the amount of Three hundred thousand, seven hundred and thirteen 00/100 ($300,713.00) Dollars, to Homebridge as Lender, and Mortgage Electronic Registration Systems, Inc. (MERS) as mortgagee and nominee of Lender, Said mortgage was secured against the 244 Cedar Street subject property and recorded in the Worcester County Registry of Deeds in Book 60347 at Page 242 on May 1, 2019. ("The Connor Mortgage" and "The Connor Note").

26.    The Connor Mortgage was designated as an "FHA" mortgage and noted as such on the mortgage itself on page one (1) with the "FHA case number" 251-6416260-702-203K.

27.    Plaintiff herein allege that all right title and interest in the note secured by the Connor Mortgage, was pooled, sold, and otherwise transferred to Ginnie Mae, who became the Lender and holder of the note given by Plaintiff in return for the mortgage loan as noted herein.

28.    On October 19, 2019 MERS assigned the Connor Mortgage to Defendant Homebridge. Said assignment was recorded in the Worcester County Registry of Deeds in Book 61261 at Page 140 on October 21, 2019.

29.    On or about September of 2020 Defendant Homebridge through its attorneys notified Plaintiff that the mortgage "has been accelerated" and that foreclosure would take place.

30.    Further, the foreclosure purportedly conducted by the Defendant is in breach of the mortgage contract at paragraph 22(d) and violation of 24 CFR 203.604(b) which states that prior to acceleration a mortgagee must have a face-to-face interview with the mortgagor, or make a reasonable effort to arrange such a meeting, before three full monthly installments due on the mortgage are unpaid.

6

31.     Plaintiff herein alleges that Homebridge, did not have a face to face interview with the borrowers before three full monthly installments due on the mortgage were unpaid, and that the Defendant made no effort to arrange such a meeting.

32.     Plaintiff further alleges that the subject property is within 200 miles of branch offices of the Defendant[1]; and that they occupied and still occupy the mortgaged property; and they never clearly indicated to the Defendant that they would not cooperate with such an interview; and they did not enter into a repayment plan, where payments thereunder were current, consistent with their circumstances to bring their account current, thus making a meeting unnecessary.

## CLASS ALLEGATIONS

33.     Plaintiff repeats and re-alleges every allegation above as if set forth herein in full.

34.     Plaintiff brings this action as a Class Action pursuant to Mass. R. Civ. P. Rule 23.

35.     The Plaintiff sues on behalf of themselves and all homeowners or former homeowners wherein Defendant Homebridge, failed to have a face-to-face interview with the mortgagor, or make a reasonable effort to arrange such a meeting, before three full monthly installments due on the mortgage were unpaid; whose properties were within 200 miles of a branch office of the Defendant; who occupied the mortgaged property as their primary residence; who never clearly indicated to the Defendant that they would not cooperate with such an interview; and who did not enter into a repayment plan, where payments thereunder were current, consistent with the their circumstances to bring the their account current thus making a meeting unnecessary, in breach of the mortgage contract at paragraph 22(d) and in violation of 24 CFR 203.604(b).

---

[1] As example, Homebridge, maintained a branch office at 159 Grossman Drive, #444, Braintree, MA 02184 at the time mortgagors were 3 months delinquent, which is within 200 miles of the mortgaged property.

36.    The gravity of harm to Plaintiff and members of the class resulting from the Defendant's breach of mortgage contracts at 22(d) and violations of 24 CFR 203.604(b) outweighs any conceivable reasons, justifications and/or motives of said Defendant for engaging in such unfair acts and practices.

37.    Defendant's conduct was unfair, oppressive, and contrary to public policy and the generally recognized standards applicable to the consumer lending business.

38.    Plaintiff and members of the class suffered quantifiable damages such as loss of equity in their homes, money spent on funding bankruptcy, legal defense of foreclosure and eviction, and moving and relocation expenses.

39.    Plaintiff and members of the class have suffered general damages such as loss of property interest, negative impact to credit ratings, loss of their homes, lost opportunities to rectify their situations through loss mitigation and mediation of their mortgage delinquencies, and extreme emotional distress.

40.    Plaintiff and members of the class claim ownership of their rightful property and seek to clear their titles of all illegal encumbrances, or in the alternative seek actual, exemplary, punitive, and monetary damages.

41.    Plaintiff's claim on behalf of themselves and all others so similarly situated that the Defendant breach of mortgage contracts at 22(d) and violations of 24 CFR 203.604(b), are the direct cause of the harms alleged herein.

42.    Excluded from the class are governmental entities, the Defendant, their affiliates and subsidiaries, the Defendant current employees and current or former officers, directors, agents, representatives, their family members, the members of this Court and its staff.

43.    Plaintiff does not know the exact size or identities of the members of the class, since such information is in the exclusive control of Defendant.  Plaintiff believes that the class encompasses hundreds of individuals whose identities can be readily ascertained from Defendant's books and records.  Therefore, the class is so numerous that joinder of all members is impracticable. (i.e. Numerosity).

44.    All members of the class have been subject to and affected by the same conduct.

45.    The questions of law and fact are common to the class, and predominate over any questions affecting only individual members of the class. (i.e. Commonality).

46.    The claims of the Named Plaintiff are typical of the claims of the class and do not conflict with the interests of any other members of the class in that the Named Plaintiff and the other members of the class were subject to the same conduct. (i.e. Typicality).

47.    The Named Plaintiff will fairly and adequately represent the interests of the class as a whole.  The Named Plaintiff are committed to the vigorous prosecution of the class claims and has retained attorneys who are qualified to pursue this litigation and have experience in class actions – in particular, wrongful foreclosure actions. (i.e. Adequacy).

48.    A Class Action is superior to other methods for the fast and efficient adjudication of this controversy.  A class action regarding the issues in this case does not create any problems of manageability.

49.    The Defendant have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

50.    The questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

51.    It is not in the best interest of members of the class to individually control the prosecution or defense of separate actions.

52.    The specific extent and nature of any litigation concerning the controversy already commenced by or against members of the class is minimal.

53.    It is desirable to concentrate the litigation of the claims in this particular forum.

54.    There are little to no difficulties likely to be encountered in the management of a classification.

**COUNT I**
**MORTGAGE POWER OF SALE**

55.    Plaintiff repeats and reincorporates by reference all paragraphs above as if fully articulated herein.

56.    Massachusetts permits non-judicial foreclosure under the statutory power of sale contained at G. L. c. 183, § 21, so long as the terms of the mortgage and the statutes related to the power of sale are strictly complied with. The statute states:

> Section 21. The following "power" shall be known as the "Statutory power of Sale", and may be incorporated in any mortgage by reference:
> (POWER)
> But upon any default in the performance or observance of the foregoing or other condition, the mortgagee or his executors, administrators, successors or assigns may sell the mortgaged premises or such portion thereof as may remain subject to the mortgage in case of any partial release thereof, either as a whole or in parcels, together with all improvements that may be thereon, by public auction on or near the premises then subject to the mortgage, or, if more than one parcel is then subject thereto, on or near one of said parcels, or at such place as may be designated for that purpose in the mortgage, **first complying with the terms of the mortgage and with the statutes relating to the foreclosure of**

**mortgages by the exercise of a power of sale,** and may convey the same by proper deed or deeds to the purchaser or purchasers absolutely and in fee simple; and such sale shall forever bar the mortgagor and all persons claiming under him from all right and interest in the mortgaged premises, whether at law or in equity.

(Emphasis added).

57.    As emphasized above, the foreclosure by power of sale requires that a foreclosing bank must "comply [] with the terms of the mortgage..." G.L. c. 183, § 21.

58.    If a bank fails to strictly comply with the power of sale and the terms of the mortgage, then a foreclosure is void. U.S. Bank Nat'l Ass'n v. Schumacher, 467 Mass. 421, 428 (2014) ("Failure to comply strictly with the power of sale renders the foreclosure void.").

59.    The mortgage given by Plaintiff secured by the subject property states at Paragraph 22(d) as follows:

22(d) Regulations of HUD Secretary. In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full, and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

60.    It is a regulation of the Secretary codified in 24 CFR 203.604(b) that:

(b) The mortgagee must have a face-to-face interview with the mortgagor, or make a reasonable effort to arrange such a meeting, before three full monthly installments due on the mortgage are unpaid...  (See: 24 CFR .604(b)).

60.    The "mortgagee" as defined by 24 CFR § 202.2 failed to have a face to face meeting with Plaintiff before three full monthly installments due on the mortgage were unpaid. Further, said mortgagee failed to make reasonable efforts to arrange such a meeting with Plaintiff.

61.    Plaintiffs mortgage incorporated the HUD regulations, which required a face to face meeting.

62.    The mortgagee failed to have any face to face meetings with Plaintiff.

11

63.    As such, there was no compliance with the terms of the mortgage which would have allowed the Defendants to exercise the statutory power of sale as indicated above.

64.    Plaintiff was not provided the opportunity to have a face to face meeting pursuant to 24 CFR 203.604.

65.    No face to face meeting was scheduled for Plaintiff by the mortgagee, Defendants or any loan servicer or any owner of the Connor Mortgage or Note.

66.    No default letter was sent to Plaintiff after a face to face meeting had occurred or which had been scheduled and had been rejected by Plaintiff.

67.    Defendants never sent Plaintiff a default notice or acceleration notice after they had been provided a face to face meeting. As a result, no acceleration letter could be sent to Plaintiff, nor could the mortgagee exercise the statutory power of sale.

68.    Pursuant to the terms of the Connor Mortgage, a face to face meeting with the mortgagee or the loan servicer pursuant to the provisions of paragraph 22(d) of those mortgages was a condition precedent to acceleration and the exercise of the statutory power of sale.

69.    Plaintiff thus never received an acceleration notice pursuant to the terms of the mortgage.

70.    Due to this failure to comply with the terms of the mortgage, no entity was contractually authorized to exercise the statutory power of sale and foreclose on the Connor Mortgage and sell the subject property at mortgagee's foreclosure sale. These actions constituted a breach of contract, resulting in damages to the Plaintiff.

71.    As a result of the above noted improper and invalid exercise of the statutory power of sale and purported foreclosure sale, Plaintiff's mortgage loan account was charged fees and costs and expenses for certified mail, advertising costs, legal fees, auctioneer costs and other charges which were reflected in her monthly mortgage statements.

72.     The Plaintiff has incurred damages in hiring an attorney, in regard to the improper actions of Defendants in sending a Notice of Foreclosure Sale and seeking to conduct a sale without first complying with the terms of the mortgage in violation of G. L. c. 183, § 21.

73.     Plaintiff has also incurred emotional injuries and damages due to the improper foreclosure of her home without Defendants first complying with the terms of the Connor Mortgage.

74.     The Plaintiff has incurred legal fees for the prosecution of this action as a result of Defendants violation of G. L. c. 183, § 21 due to the breach of contract by Defendant as noted herein.

75.     Plaintiff and members of the class are have suffered harm and is threatened with additional harm from Defendants breach, including but not limited to loss of property interest, higher principle balance, improper negative reporting to credit bureaus; inappropriate fees and charges assessed to her, including broker price opinion fees, inspection fees, attorney's fees, "process management" fees, late fees and other charges associated with delinquency and default, and increased accrued interest.

76.     The Defendants breach of contract and failure to comply with terms of the mortgage as noted herein above, are the direct cause of the harms alleged herein and not Plaintiff's failure to make her mortgage payments.

77.     Plaintiff and members of the class are weredenied the opportunity to have a face to face meeting which would have enabled her to explore loss mitigation opportunities and strategies to deal with her default resulting in a resolution of default as HUD regulations codified at 24 CFR 203.604 were intended to accomplish.

78.     Therefore, Plaintiff and members of the class would not have suffered foreclosure, or the harms as noted herein were it not for the Defendants breach of the mortgage contract as noted herein.

79.     The Defendants failure to comply with the terms of the mortgage is in violation of G. L. c. 183, § 21. The foreclosure is therefore void. U.S. Bank Nat. Ass'n v. Ibanez, 458 Mass. 637, 647 (2011) ("the terms of the power of sale, G.L. c. 183, § 21, must be strictly adhered to"); See also Paiva v. Bank of New York Mellon, USDC Mass. 14-1453, August 11, 2015 (Burroughs, A.) ("Because the Court finds that Countrywide's notice ... did not strictly comply with the requirements of paragraph [22] of the mortgage, the foreclosure sale is void.").

80.     The Plaintiff and members of the class are entitled to a declaratory judgment determining that the acceleration of all sums due under the note, the foreclosure, and the mortgagee's foreclosure sale of the subject property are all void.

81.     The Plaintiff and members of the class are entitled to an injunction preventing the transfer of the right, title, and interest in her property.

82.     The Plaintiff and members of the class are entitled to cancellation costs and fees assessed to her for wrongful foreclosure, together with additional damages.

83.     Plaintiff and members of the class are entitled to a Court Order requiring that Defendants take all necessary steps to return Plaintiff to her status and circumstances prior to the wrongful acceleration, attempted foreclosure and sale.

84.     Plaintiff and members of the class are entitled to actual, monetary, punitive and exemplary damages, restitution, an accounting, attorneys' fees and costs, equitable relief and all other relief as provided by state law.

## COUNT II
## BREACH OF CONTRACT AND FAILURE TO COMPLY WITH CONDITIONS PRECEDENT TO EXERCISE THE STATUTORY POWER OF SALE

85.     Plaintiff and members of the class repeats and re-alleges every allegation above as if set forth herein in full.

86.     As described above, the mortgage contract entered into by Plaintiff constitutes a valid offer.

87.     Upon Plaintiff executing the mortgage contract and giving it to her Lender, the Lender accepted that offer.

88.     Alternatively, Plaintiff's execution of the mortgage contract thereby giving a security interest in her property to her Lender constitutes an offer. Acceptance of that offer occurred when Defendants and their predecessors in interest accepted payments made by Plaintiff pursuant to the mortgage contract.

89.     The mortgage contract was supported by consideration. Plaintiff's payments to Defendants and their predecessors in interest, constitutes consideration.

90.     Plaintiff and Defendants thereby formed a valid contract and Plaintiff was, is, and remains ready willing and able to perform under said contract.

91.     Defendants breached the mortgage contract of Plaintiff by refusing to honor the terms of the mortgage contract as stated at paragraph 22(d) which states in pertinent part;

> 22(d) Regulations of HUD Secretary. In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full, and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

92.     It is a regulation of the Secretary codified at 24 CFR 203.604(b) that:

(b) The mortgagee must have a face-to-face interview with the mortgagor, or make a reasonable effort to arrange such a meeting, before three full monthly installments due on the mortgage are unpaid...  (See: 24 CFR .604(b)).

92.    In Massachusetts, a contract containing an obligation of the Lender that the Lender abide by Regulations of the HUD Secretary prior to acceleration and sale is construed as a condition precedent, which requires strict compliance.

93.    The Connor Mortgage at paragraph 22(d), obligates the Lender to abide by Regulations of the HUD Secretary limiting the Lenders ability to accelerate, foreclose and sell if HUD Regulations prohibit it.

94.    In Massachusetts, a mortgagee agreeing to abide by Regulations of the HUD Secretary before acceleration, foreclosure, and sale, must adhere to those Regulations, with the level of specificity as agreed.

95.    In Massachusetts, the power to sell by foreclosure sale is derived from the mortgage and statute, and strict compliance with the requirements of paragraph 22(d) of the mortgage is an obligation of the mortgagee. Failure to have a face to face meeting with the mortgagor before three monthly payments due on the mortgage are unpaid and then accelerating, attempting foreclosure, and sale is a violation of 24 CFR 203.604(b) which is a regulation of the HUD Secretary limiting a lenders rights to accelerate, foreclose, and sell and thus is a breach of mortgage contract at 22(d) and renders the acceleration and attempted foreclosure of the Connor Mortgage and sale of the subject property void.

96.    Plaintiff's mortgage incorporated the HUD regulations, which required a face to face meeting as noted herein.

97.    Defendants knew Plaintiff never had any face to face meeting pursuant to HUD Regulations.

98.    Therefore, there was no compliance with the terms of the mortgage which would have allowed the Defendants to exercise the statutory power of sale as indicated above.

99.    Plaintiff was not provided the opportunity to have a face to face meeting pursuant to HUD Regulations.

100.    No face to face meeting was scheduled for Plaintiff by Defendants or any loan servicer or any owner of the Connor Mortgage or Note.

101.    Defendants never sent Plaintiff a default notice or acceleration notice after she had been provided a face to face meeting. As a result, no acceleration letter could be sent to Plaintiff, nor could the any entity exercise the statutory power of sale.

102.    Pursuant to the terms of the Connor Mortgage, a face to face meeting with the mortgagee or the loan servicer pursuant to the provisions of paragraph 22(d) is a condition precedent to acceleration and the exercise of the statutory power of sale.

103.    Plaintiff thus never received an acceleration notice pursuant to the terms of her mortgage.

104.    Due to this failure to comply with the terms of the mortgage, no entity was contractually authorized to exercise the statutory power of sale and foreclose Connor Mortgage and sell the subject property at mortgagee's foreclosure sale. These actions constituted a breach of contract, resulting in damages to the Plaintiff.

105.    As a result of the above noted improper and invalid exercise of the statutory power of sale and purported foreclosure sale, Plaintiff's mortgage loan account was charged fees and costs and expenses for certified mail, advertising costs, legal fees, auctioneer costs and other charges which were reflected in her monthly mortgage statements.

106.    The Plaintiff has incurred damages in hiring an attorney, in regard to the improper actions of Defendants in sending a Notice of Foreclosure Sale and conducting a sale without first

complying with the terms of the mortgage in violation of G. L. c. 183, § 21 and in breach of contract.

107.    Plaintiff has also incurred emotional injuries and damages due to the improper foreclosure of her home without Defendants first complying with the terms of the mortgage and breaching the Connor mortgage contract.

108.    The Plaintiff has incurred legal fees for the prosecution of this action as a result of Defendants violation of G. L. c. 183, § 21 and breach of contract as noted herein.

109.    Plaintiff has suffered harm and is threatened with additional harm from Defendants breach, including but not limited to loss of property interest, higher principle balance, improper negative reporting to credit bureaus; inappropriate fees and charges assessed to her, including broker price opinion fees, inspection fees, attorney's fees, "process management" fees, late fees and other charges associated with delinquency and default, and increased accrued interest.

110.    The Defendants breach of contract and failure to comply with terms of the mortgage as noted herein above, are the direct cause of the harms alleged herein and not Plaintiff's failure to make her mortgage payments.

111.    Plaintiff was denied the opportunity to have a face to face meeting which would have enabled her to explore loss mitigation opportunities and strategies to deal with her default resulting in a resolution of default as HUD regulations codified at 24 CFR 203.604 were intended to accomplish.

112.    Therefore, Plaintiff would not have suffered acceleration, foreclosure and sale, or the harms as noted herein were it not for the Defendants breach of the mortgage contract as noted herein.

113.    The Defendants failure to comply with the terms of the mortgage is a breach of contract and also is in violation of G. L. c. 183, § 21. The foreclosure is therefore void. U.S. Bank Nat.

Ass'n v. Ibanez, 458 Mass. 637, 647 (2011) ("the terms of the power of sale, G.L. c. 183, § 21, must be strictly adhered to"); See also Paiva v. Bank of New York Mellon, USDC Mass. 14-1453, August 11, 2015 (Burroughs, A.) ("Because the Court finds that Countrywide's notice ... did not strictly comply with the requirements of paragraph [22] of the mortgage, the foreclosure sale is void.").

114.    The Plaintiff and members of the class are entitled to a declaratory judgment determining that the acceleration of all sums due under the note, the foreclosure, and the mortgagee's foreclosure sale of the subject property are all void.

115.    The Plaintiff and members of the class are entitled to an injunction preventing the transfer of the right, title, and interest in her property.

116.    The Plaintiff and members of the class are entitled to cancellation costs and fees assessed to her for wrongful foreclosure, together with additional damages.

117.    Plaintiff and members of the class are entitled to a Court Order requiring that Defendants take all necessary steps to return Plaintiff to her status and circumstances prior to the wrongful acceleration, attempted foreclosure and sale.

118.    Plaintiff and members of the class are entitled to actual, monetary, punitive and exemplary damages, restitution, an accounting, attorneys' fees and costs, equitable relief and all other relief as provided by state law.

Dated: November 16, 2020

Respectfully Submitted,
Plaintiff, on Behalf of Themselves
And All Others So Similarly Situated,
Through Their Attorney,

/s/ Todd S. Dion
Todd S. Dion Esq. (#6852) 659109
15 Cottage Avenue, Ste 202
Sturbridge, MA 01518
Quincy        02169

401-965-4131 Phone
401-270-2202 Fax
toddsdion@msn.com

## VERIFICATION OF COMPLAINT

I, John Connor, Plaintiff in the above-captioned action, hereby depose and state that I am the person and subscribed to the foregoing complaint, and the facts set forth therein are based upon my own personal knowledge and are true and correct.

Signed under the penalties of perjury on November 16, 2020.

Date:

Respectfully submitted,
John Connor